IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRYANT JONES, #243-882
    Plaintiff                              :

    v.                                         :      CIVIL ACTION NO. DKC-13-2563

MD. DIVISION OF CORRECTION,    :
KATHLEEN GREEN,[1] WARDEN,
  EASTERN CORRECTIONAL          :
  INSTITUTION
    Defendants                       :

## MEMORANDUM OPINION

Plaintiff, a Maryland Division of Correction prisoner currently housed at Roxbury Correctional Institution in Hagerstown,[2] seeks money damages and declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he was wrongly identified as a gang member, resulting in sanctions that included an inability to earn wages and additional diminution credits through prison employment while housed at Eastern Correctional Institution ("ECI"). Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 12) which is opposed by Plaintiff. (ECF No. 14). A hearing is not needed to resolve the case. *See* Local Rule 105.6 (D. Md. 2014).

### Background

Plaintiff, who is self-represented, claims that on or about July 8, 2010, while housed at ECI, he was denied the opportunity for a job with Maryland Correctional Enterprises (MCE) based on a designation as a member of Security Threat Group (STG). Plaintiff claims that he would have earned between $80 to $250 per month and ten diminution credits per month had he

---

[1] The Clerk shall amend the docket to reflect the identity of the Warden, who is Kathleen Green.

[2] At the time he filed his Complaint, Plaintiff was housed at Patuxent Institution in Jessup. ECF Nos. 1-2. He was transferred from Patuxent to Roxbury Correctional Institution on or before February 11, 2014. ECF No. 15.

worked for MCE. He states that he has never been a member of an STG group, and that Defendants have thwarted his attempts to refute his designation as a STG member.

Defendants assert that the Plaintiff failed to exhaust his administrative remedies because this Complaint is based on an issue that was not raised during the administrative review process. Defendants also address the merits of the Complaint, stating that Plaintiff was only denied employment temporarily based on his disciplinary history, not his status as a member of a STG. They further argue that Plaintiff was provided the requisite level of due process in validating him as a member of a STG.

## Standard of Review

Under Fed. R. Civ. P. 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

Analysis

Defendants have raised an affirmative defense claiming that the allegations contained in the Complaint must be dismissed in their entirety due to Plaintiff's failure to exhaust administrative remedies. The Prison Litigation Reform Act ("PLRA") contains a statutory provision that reads, in pertinent part:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e. Plaintiff is subject to the strict requirements of the exhaustion provisions, and it is of no consequence that he is aggrieved by single occurrences, as opposed to a general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure, *see Booth v. Churner*, 532 U.S. 731, 741 (2001), and a claim which has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See id.* 478 F.3d at 1225; *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006). Conversely, a

3

> prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir.2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008). Thus, unexhausted claims must be dismissed, unless Plaintiff can show that he, personally, has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md.1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir.2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Maryland provides a three-step grievance process: request for administrative remedy to the Warden of the institution (commonly referred to as an ARP); an appeal of administrative

4

dismissal to the Commissioner of Corrections; and submission of the grievance to the Inmate Grievance Office (IGO).[3]  *See Chase,* 286 F. Supp. 2d at 529.

Defendants concede that Plaintiff filed ARP ECI-3264-10 with the Warden and fully exhausted two issues, namely (1) whether the Division of Correction ("DOC") was required, but failed, to interview him before validating him as an STG member, and (2) that he was provided no opportunity to challenge the DOC's determination that he was an STG member, in violation of his due process rights.  Defendants argue, however, that these issues are not raised in this Complaint, which instead focuses on whether the information upon which the STG validation was based existed at the time the validation was rendered.

Plaintiff contends that exhaustion was proper, noting that he proceeded with administrative remedies, including an IGO hearing.  ECF No. 14.  The undersigned has examined the IGO hearing transcript and related materials (ECF No. 14, Ex. 1-3) as well as Plaintiff's IGO appeal (ECF 12-5, p. 3).[4]  While the nature of Plaintiff's claim – which originated in 2010 -- has expanded or shifted, at its core the claim focuses on whether Plaintiff was improperly classified as having gang connections and as a result denied participation in a program that provided wages and diminution credits.  Examination of the merits of the claim shall proceed.

In the prison context there are two different types of constitutionally protected liberty interests which may be created by government action.  The first is created when there is a state-

---

[3] An appeal to the IGO must be filed within thirty days following an unfavorable decision from the Commissioner. *See* Md. Code Ann., Corr. Serv. Art. §10-206 and COMAR, Title 12 § 07.01.03.  The court notes that Plaintiff unsuccessfully sought review of the ALJ's decision in the Circuit Court for Howard County, and sought leave to appeal the Circuit Court decision in the Court of Special Appeals of Maryland.  ECF No. 1, p. 2.

[4] This court's citation reflects the docketing designations contained in the court's electronic docket.

created entitlement to an early release from incarceration. *See Board of Pardons v. Allen*, 482 U. S. 369, 381 (1987) (state created liberty interest in parole); *Wolff v. McDonnell*, 418 U. S. 539, 557 (1974) (state created liberty interest in good conduct credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995). Generally, the lack of opportunity to earn or have applied diminution credits is not an atypical and significant hardship. *See Bulger v. United Sates Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995). Furthermore, prisoners do not have a constitutionally protected right to work while detained or incarcerated, or to remain in a particular job once assigned. *See Awalt v. Whalen*, 809 F. Supp. 414, 416-17 (E.D. Va. 1992); *Altizer v. Paderick*, 569 F. 2d 812, 815 (4th Cir. 1978).

Here, Plaintiff contends that the MCE position he once held, which provided wages and diminution credits, was denied based on an erroneous classification determination that he was gang-affiliated. Plaintiff complains of due process violations where (1) the determination was based on information given by a "confidential informant" who was not at Plaintiff's institution at the time the information was provided, and (2) where Plaintiff was not interviewed as part of the determination process.

Prisoners have a limited constitutional right, grounded in the Due Process Clause, to have prejudicial erroneous information expunged from prison files and they are deprived of this right if prison officials refuse to expunge such material after being requested to do so. *See Paine v. Baker*, 595 F.2d 197, 201 (4th Cir. 1979). However, it is not sufficient that a prisoner simply disputes evaluations and opinions regarding him; federal courts will not second-guess these

evaluations. The erroneous information must have been relied on to a constitutionally significant degree[5] in order to state a claim. *Id*. "If the information is relied on to deny parole or statutory good-time credits, or to revoke probation or parole, the inmate's conditional liberty interest is at stake and the due process clause is called into play." *Id*. at 202, citing *Wolff v. McDonnell*, 418 U.S. 539 (1974). As a jurisdictional predicate to filing § 1983 action, the prisoner must first request that authorities expunge the information, and the authorities must be given a reasonable opportunity to respond. If they admit the presence of data but deny its falsity or if they fail to respond, a civil rights action may be maintained. *Id*. at 202-03.

Assuming, arguendo, that a prison finding restricted a state-created entitlement to diminution credits impacting Plaintiff's early release from incarceration and encompassed a liberty interest that gives rise to scrutiny under § 1983, Plaintiff failed to meet his burden under *Paine v. Baker, supra,* because the allegedly false information was not relied upon to a constitutionally significant degree. Although prison records note that Plaintiff had been validated as a STG member, it was his disciplinary record – not his gang affiliation -- that resulted in his ineligibility for a "preferred job assignment." (ECF No. 12-2, pp. 3, 9). Plaintiff was transferred to ECI on December 18, 2009. He was issued a notice of infraction for a Category I rule violation in May of 2010. On June 10, 2010, Plaintiff was found guilty of violating Rule 112 for possessing or using a controlled dangerous substance, and sanctioned with 60 days of disciplinary segregation and a 180-day mandatory loss of good conduct credits. *Id.*

---

[5] This requirement is satisfied where information is relied on to make decisions that implicate a prisoner's liberty interest, e.g. to deny parole or good time. It is also satisfied where an administrative action such as transfer, although not itself implicating liberty interest, may have an adverse collateral consequence on a prisoner's liberty interest in parole. Decisions on purely internal matters such as work assignments within prison usually would not have such a constitutionally significant effect. *Paine v. Baker*, 595 F.2d at 202.

On July 7, 2010, he completed his segregation sentence and applied for a preferred job with MCE. *Id.,* p. 3. Because he had been convicted of a Category I infraction, Plaintiff was ineligible for a preferred job assignment until one year after his removal from segregation. *Id., see also* ECF 12-7, ECI Institutional Directive 100.0001.1, citing DOC Directive 100.0001.05. Thus, at the time Plaintiff initiated his ARP complaint on July 23, 2010, he was ineligible for a position with MCE based on his disciplinary record. Plaintiff is still designated at validated member of an STG, but became eligible for jobs, including "preferred jobs," on June 11, 2011, one year after the expiration of his segregation sentence for a Category I rule violation. (ECF No. 12-2, p. 3). He was assigned a sanitation job on December 2, 2011.[6] *Id.,* p. 4.

To the extent Plaintiff alleges that Defendants misinterpreted or misapplied Division of Correction regulations or directives in "validating" him as a member of a STG, his claims fails. To the extent any written directive was not followed to the letter, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987).[7] Furthermore, Plaintiff was not denied due process regarding an opportunity to refute his STG validation, and challenged the finding administratively and in the state circuit and appellate courts.

---

[6] It is unclear whether Plaintiff has held a prison job since his transfer from Patuxent to Roxbury Correctional Institution.

[7] Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Plaintiff pursued his claim through the administrative process and an Administrative Law Judge found sufficient facts to support the DOC's conclusion that Plaintiff was affiliated with a prison gang. Nothing more is constitutionally required.

Defendants are entitled to summary judgment.[8] A separate Order shall be entered in accordance with this Memorandum Opinion.

Date:   August 28, 2014                              /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge

---

[8] Having found no constitutional violation, the court need not consider Defendants' arguments regarding qualified immunity.